UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL HARRIS,

    Plaintiff,

    v.

COUNTY OF KING and CITY OF DES MOINES, et al.,

    Defendants.

CASE NO. C05-1121C

ORDER

## I. INTRODUCTION

This matter comes before the Court on the parties' following motions for summary judgment:

(1) Defendant Barron Baldwin's Motion for Summary Judgment (Dkt. No. 30);

(2) Defendant City of Des Moines's Motion for Summary Judgment (Dkt. No. 22).

The Court has considered all of the papers submitted regarding these motions and determined that oral argument is not necessary. The Court hereby DENIES the motion for summary judgment of Defendant Baldwin and GRANTS the summary judgment motion of Defendant City of Des Moines, as follows.

## II. BACKGROUND AND FACTS

This case involves claims arising out of an incident in which police officers used taser guns on Plaintiff Michael Harris on June 30, 2003 in the course of arresting him on a felony warrant and his

ORDER – 1

subsequent treatment at the King County Jail.

Though Plaintiff and Defendant Baldwin agree on many facts regarding the tasing incident, they disagree on how compliant Plaintiff was with the officers and whether such actions justified the use of three different tasers against him. Plaintiff contends that he was walking away from the home of an acquaintance when the officers ordered him to stop and put his hands up. (Pl.'s Opp'n to Baldwin Mot. 5.) He alleges that Deputy James Keller[1] tased him even though he was complying with the officers' orders. (*Id.*) After the taser's dart grazed him in the side, Plaintiff pulled it out and threw it on the ground. (Harris Decl. in Supp. of Pl.'s Opp'n to Baldwin Mot. 2.) He then claims that he put up his hands and complied with orders to turn around, at which time Deputy George Alvarez and Officer Baldwin both discharged their own tasers at him, striking him in the back and causing severe pain. (*Id.*)

Though Defendant Baldwin agrees that Plaintiff was tased three times by the officers, he disputes what prompted the discharge of the weapons. He claims that the officers approached Plaintiff, identified themselves and ordered him to stop. (Def. Baldwin's Mot. 2.) Baldwin claims that Plaintiff then began to run, at which point Deputy Keller fired his taser. (*Id.*) Baldwin agrees with Plaintiff that the first taser struck but did not penetrate Plaintiff's skin and that Plaintiff then pulled the dart out. (*Id.*) At this point, Defendant Baldwin states that he and Deputy Alvarez discharged their own tasers at Plaintiff. (*Id.*)

It is undisputed that Plaintiff was under the influence of methamphetamine at the time of the incident and that he weighed approximately 300 pounds.

Once in custody, Plaintiff sought medical treatment for injuries he sustained as a result of being tased. (Harris Decl. 2-3.) The jail personnel did not ask if he wanted to file a use of force complaint, though they did suggest that he "maybe [] should see a lawyer." (*Id.*) Neither Plaintiff nor his lawyer filed any complaint until nearly two years later. (Def. Des Moines's Exhibit C (Claim for Damages).) By

---

[1] Plaintiff does not identify each individual officer's actions by name, but does not contest Defendant Baldwin's contention that Keller was the officer that fired this first shot and that Baldwin and Alvarez fired subsequently. (*See* Def. Baldwin's Mot. 2.)

ORDER – 2

1  that time, Defendant Baldwin had already been fired for, among other things, use of excessive force in

2  other incidents. (O'Leary Decl. in Supp. of Def. City of Des Moines's Mot. 2-3.)

3  　　　　Plaintiff filed a claim under 42 U.S.C. § 1983 against officers Barron, Alvarez, and Keller, King

4  County, and the City of Des Moines claiming that he was subjected to excessive force during the course

5  of his arrest. (Dkt. No. 1.) He also brought claims for assault and outrage under Washington state law

6  based on the same events. (*Id.*)

7  **III.    ANALYSIS**

8  　　　**A.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

9  　　　　Rule 56 of the Federal Rules of Civil Procedure states that a party is entitled to summary

10  judgment in its favor "if the pleadings, depositions, answers to interrogatories, and admissions on file,

11  together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

12  moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

13  an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving

14  party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

15  242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material

16  fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party.

17  *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to

18  require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

19  *Id.* at 251-52. The moving party bears the burden of showing that there is no evidence which supports an

20  element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once

21  the movant has met this burden, the nonmoving party then must show that there is in fact a genuine issue

22  for trial. *Anderson*, 477 U.S. at 250.

23  　　　**B.    DEFENDANT BALDWIN'S MOTION FOR SUMMARY JUDGMENT**

24  　　　　**1.    BALDWIN'S EVIDENTIARY OBJECTIONS**

25  　　　　Defendant makes multiple objections to the exhibits attached to Plaintiff's Response on hearsay

26  ORDER – 3

1  and relevancy grounds.  (*See* Def. Baldwin's Reply 1-3).  The Court has noted these objections and has

2  considered only admissible evidence in making its determination.  Defendant also objects to the manner in

3  which Plaintiff electronically signed his declaration, citing the CM/ECF Filing Procedures.  However

4  Plaintiff's use of the "/s/" is acceptable.

### 2. QUALIFIED IMMUNITY FOR THE § 1983 CLAIM

For Defendant Baldwin to establish a defense of qualified immunity, the Court must determine (a) whether taken in the light most favorable to the party asserting the injury, the facts show that Defendant Baldwin's conduct violated a constitution right, and (b) if so, whether the constitutional right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

#### a. ALLEGED CONSTITUTIONAL VIOLATION

To state a claim under 42 U.S.C. § 1983, Plaintiffs must establish (1) that he was "deprived of a right secured by the Constitution or laws of the United States" and (2) that "the alleged deprivation was committed under color of state law."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). No party disputes that the officers in this case were acting under color of state law at the time of the arrest.  Thus, the only issue is whether the officers deprived Plaintiff of a constitutional right.

Excessive force claims are analyzed under the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 388 (1989).  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  *Id.* at 396.  The inquiry is an objective one, judged from the perspective of a reasonable officer at the scene. *Id.*  Though such an inquiry is incapable of mechanical application, relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*

While the use of taser guns is not per se unconstitutional, they may not be used when "unnecessary or for the sole purpose of punishment or the infliction of pain."  *Mitchenfelder v. Sumner*,

ORDER – 4

860 F.2d 328, 336 (9th Cir. 1998) (internal quotations omitted).  In *Sumner*, the Ninth Circuit upheld the use of tasers to enforce compliance with a search in the prison context that had a "reasonable security purpose" because the inmate had already refused to comply with the strip search.  *Id.* at 335.  Under the facts as alleged by Plaintiff in this case, however, Plaintiff was complying with orders when he was tased for the first time and then was complying again when he was later tased simultaneously by Baldwin and Alvarez.

Since the relevant Motion is brought by Defendant Baldwin, the focus of this inquiry is whether Baldwin's tasing of Plaintiff was excessive.  Considering the facts in the light most favorable to the Plaintiff, Plaintiff was fully compliant with the officers' orders and had his back towards them with his hands held up when Defendant Baldwin tased him.  Even if, as Defendant Baldwin contends, the visceral act of removing the first dart and stomping on it could be construed as "active resistance" to the arrest (*see* Def. Baldwin's Reply 5), any such resistance ended by the time Plaintiff had his back towards the officers with his hands over his head.  Thus, Defendant Baldwin's use of the taser against Plaintiff clearly would have been unnecessary to effectuate the arrest because he was already compliant.  Discharge of the weapon was likewise unnecessary to protect the officers' safety since Plaintiff's submissive behavior posed no threat to their safety.  Accordingly, the use of the taser on these facts was unnecessary and thus constituted excessive force in violation of the Fourth Amendment.  *See Graham*, 490 U.S. at 388.

Accordingly, Plaintiff's allegations establish a violation of a constitutional right and the Court must now address whether the right allegedly violated was clearly established.

### b.   CLEARLY ESTABLISHED RIGHT

While there is there is "no doubt" for "the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness," the violation must have been clearly established in a more particularized sense.  *Saucier*, 533 U.S. at 201-02.  In this case, the question focuses on whether is it clearly established that a police officer may not use a taser gun on an arrestee to effectuate an arrest when the arrestee is complying with the officer's orders and when the

ORDER – 5

suspect has already turned around and put his hands over his head at the direction of the officer.

This Court finds as a matter of law that it was clearly established that the use of taser weapons in such an instance would constitute excessive force. It does so not only because of the intuitively gratuitous nature of administering painful electric shocks to an arrestee who is passively complying with an officer's orders, but also because of *Sumner*'s very explicit warning that a "policy of carrying tasers to enforce discipline and security would not warrant their use when unnecessary or for the sole purpose of punishment or the infliction of pain." *Sumner*, 860 F.2d at 336. Thus, this Court holds that Defendant Baldwin is not entitled to qualified immunity on the facts alleged.

### 3. STATE CLAIMS

Because Plaintiff's claims of outrage and assault are parasitic on whether Defendant Baldwin used excessive force when arresting Plaintiff, the analysis above precludes disposing of these claims on summary judgment.

### C. DEFENDANT CITY OF DES MOINES'S MOTION FOR SUMMARY JUDGMENT

Under *Monell v. Department of Social Services of New York* and its progeny, a municipality can only be found liable under § 1983 when the municipality itself causes a constitutional violation through the execution of its policies or customs. 436 U.S. 658 (1978). It cannot be held liable under a theory of *respondeat superior. Id.* The City of Des Moines moves for summary judgment on this ground, arguing that no City custom or policy caused the Plaintiff's alleged constitutional deprivation.

Plaintiff does not allege any affirmative act on behalf of the City that caused his constitutional violation.[2] Rather, Plaintiff alleges that the City's *failure to act* in ways that would have averted a

---

[2] Though Plaintiff attempts to advance a "ratification" theory of *Monell* liability based on the City's failure to investigate the tasing incident, he does not allege that the officers' supervisors actually reviewed and approved of the officers' conduct as would be required under a ratification theory of municipal liability. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). While "[a] single decision by a municipal policymaker may be sufficient to trigger section 1983 liability under Monell . . . the plaintiff must show that the triggering decision was the product of a *conscious, affirmative choice* to

ORDER – 6

constitutional violation constitutes a "policy or custom" for which the City can be held accountable. The distinction between a municipality's acting in accordance with established customs or policies and its failure to act in a certain manner is an important one for § 1983 claims. Whereas all affirmative actions that constitute policies or customs—written or unwritten—give rise to municipal liability, only where a municipality's failure to act "evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378 (1989) (holding a city liable for its failure to adequately train police officers). Deliberate indifference is a "stringent standard of fault" that requires "that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs of Bryan County, v Brown*, 520 U.S. 397 (1997). This disregard must be a "conscious, affirmative choice." *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992).

Plaintiff claims that such a conscious choice was made by the City's failure to (1) investigate the rumored prior bad acts of the officers in question, (2) investigate omissions in officers' use of force reports and other nonconformance with written use of force protocol, (3) adopt written standard operating procedures for its undercover officers on how to operate, or (4) establish a proper procedure in King County Jail for identifying and investigating potential instances of excessive force by arresting police officers. For the following reasons, the Court disagrees with each of these contentions.

//

---

ratify the conduct in question." *Haugen v. Brosseau*, 339 F.3d 857, 875 (9th Cir 2003) (emphasis added), *rev'd on other grounds*, 543 U.S. 194 (2004). Thus, Plaintiff's so-called "ratification" theory is merely the argument that policymakers failed to act. Accordingly, it will be analyzed under the same deliberate indifference standard as all such omission claims. *See City of Canton v. Harris*, 489 U.S. 378 (1989).

Further, any ratification theory would be inapposite here where it is undisputed that the City did not even have notice of an excessive force complaint by Plaintiff because he did not file one until almost two years after the incident (*See* Def. City of Des Moines's Exh. C 19-20 (Claim for Damages Form)) at which time Defendant Baldwin had already been fired by the City for misconduct in another incident (O'Leary Decl. at 1-2).

ORDER – 7

### 1. THE FAILURE TO INVESTIGATE PRIOR BAD ACTS BY THE OFFICERS

Plaintiff alleges that the City disregarded a known or obvious risk of harm to its citizens by failing to respond to various clues that the officers involved here were aggressive and frequently used excessive force. Because the deliberate indifference standard for inaction requires that a municipality make an affirmative, conscious choice not to act in order to have established a "policy" for which it can be held liable, typically a Plaintiff will have to demonstrate a showing of a pattern of tortious conduct rather than a single incident. *See Brown*, 520 U.S. at 407-08.

Here, Plaintiff argues that it was "general knowledge" and "the subject of rumors" that officers "had been operating for several months on the SEU unit, making individual decisions not in compliance with the group plans, abusing their citizen informants, and illegally entering homes." (Pl.'s Opp'n to Des Moines's Mot. 14.) Such bare accusations of rumors and general knowledge are far too vague and unsubstantiated to defeat summary judgment, especially in the context of the stringent "deliberate indifference" standard.

Moreover, Plaintiff points to only one specific incident in addition to his own in which these officers may have used excessive force: a claim by Mr. Keith Barry. However, Mr. Barry did not file a complaint until January 9, 2004—over six months after this Plaintiff was tased—and the incident involving him thus could not have put the City on notice of the officers' bad acts. (Pl.'s Exh. 14.)

Plaintiff has fallen far short of demonstrating that the City either knew or should have known about any of the alleged conduct—let alone whether such conduct actually occurred. Accordingly, Plaintiff cannot demonstrate that the City was deliberately indifferent. *See Brown*, 520 U.S. at 407-08.

### 2. THE USE OF FORCE PROTOCOL

Plaintiff alleges that the City of Des Moines failed to adopt procedures that would follow up on officers' alleged failure to comply with the City's own use of force protocols. Though each officer filled out use of force reports, Plaintiff alleges that they were not sufficiently detailed because the officers did

ORDER – 8

not explain why three different officers fired their tasers, why they did not call an aid car after Plaintiff had been tased, or why pictures of Plaintiff were not taken. (Pl.'s Opp'n 9.)

Plaintiff appears to be making two slightly different arguments here. First, Plaintiff seems to be arguing that the City's failure to investigate Plaintiff's own tasing incident on June 30, 2003 somehow led to a violation of his constitutional rights. Even if Plaintiff could prove that the City disregarded a known or obvious consequence of failing to follow up on any omissions in the officers' use of force reports for the incident in which *he* was tased, he would still have to demonstrate causation. *See Brown*, 520 U.S. at 404. Yet, Plaintiff has failed to demonstrate how the City's omissions in following up on use of force reports *after the violation had already occurred* could possibly have been the "moving force" behind the violation itself given that constitutional wrong had already taken place. *See id.*

Second, Plaintiff suggests that the failure of the City to investigate any omissions from the use of force reports is indicative of a larger problem in which officers had "no incentive to follow the written policies and procedures" because they knew they would not be held accountable for such failures. (Plaintiff's Opp'n to Def. Des Moines's Mot. 13.) It is within this lax culture that Plaintiff alleges officers are able to violate protocol with impunity. However, Plaintiff fails to provide any evidence that could demonstrate that such a lax culture exists other than those facts alleged in the June 30, 2003 tasing of this very plaintiff. This single incident by itself is insufficient evidence from which to draw the conclusion that the City was consistently failing to investigate gaps in use of force complaints or that it otherwise was deliberately indifferent to the risk that constitutional violations might occur.

Accordingly, any incomplete or deficient responses by the police with respect to their review of the use of force complaints cannot sustain a claim of liability against Des Moines.

### 3. THE LACK OF TRAINING FOR UNDERCOVER OFFICERS

Plaintiff claims that the City of Des Moines is liable for failing to train Officer Baldwin for "plain clothes work, [] gang or street crime work, or undercover crime investigation." Plaintiff must demonstrate not only that the officers' training was deficient, but also that the specific deficiency alleged

ORDER – 9

actually caused his constitutional injury.  However, Plaintiff offers no evidence that plain-clothes officers require any different training to properly arrest subjects on arrest warrants than would any other officer.  Plaintiff does not allege that the officers were ineffective as undercover agents, but rather that he was the subject of excessive force.  He offers no theory as to how more knowledge of gang or street crime work would have prevented the allegedly malicious conduct which occurred here.  Plaintiff also offers no theory as to what specific training could have prevented the alleged constitutional violation.  Accordingly, Plaintiff has again failed to demonstrate anything like "a direct causal link between the municipal action and the deprivation of federal rights."  *Brown*, 520 U.S. at 404.

### 4.    THE LACK OF JAIL PROCEDURES TO IDENTIFY EXCESSIVE FORCE

Plaintiff alleges that the City of Des Moines is responsible for "failing to adopt procedures for Jail Health and other jail personnel to report alleged use of excessive force to be investigated."  (Pl.'s Opp'n to Def. Des Moines's Mot. 8.)  Though it is uncontested that Plaintiff did not attempt to file an excessive force complaint against the officers until nearly two years after the incident, he argues that the Jail should have had a process for identifying those in its custody who might have been subjected to abuse given their physical condition when they arrived at the facility.

First, even if such a policy were constitutionally necessary, Plaintiff fails to explain how the City of Des Moines is responsible for the actions of the King County Jail.  They are two separate municipal entities and it is unclear how the City could be responsible for the County Jail's internal procedures.

Additionally, Plaintiff again has failed to demonstrate any causation between the alleged inaction and his constitutional injury.  By the time he had arrived at the Jail, the excessive force of which he complains had already occurred, and hence could not have been rectified even through the most diligent of investigations.

Further, Plaintiff has not established that the Jail had a pattern of failing to investigate claims of excessive force by failing to allege any other single incident in which the Jail should have investigated an apparent victim of excessive force but failed to do so.  The mere fact that Plaintiff was tased and suffered

ORDER – 10

pain as a result of that incident does not demonstrate the requisite conscious disregard required of deliberate indifference claims.

Thus, the City of Des Moines is not liable for any claims arising out of Plaintiff's treatment at the King County Jail.

### IV. CONCLUSION

For the reasons set forth in this Order, the Court DENIES Defendant Barron Baldwin's Motion for Summary Judgment and GRANTS Defendant City of Des Moines Motion for Summary Judgment. Plaintiff may proceed with all claims against Defendant Baldwin. Plaintiff's claims against City of Des Moines are DISMISSED in their entireties.

SO ORDERED this 21st day of September, 2006.

John C. Coughenour
United States District Judge

ORDER – 11